**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LORI BERRY, as parent and legal guardian of Allen Berry, and ALLEN BERRY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 11-cv-1343 |
| WOODLAND HILLS SCHOOL DISTRICT, Principal DANIEL STEPHENS, WAYNE ANDERSON, Churchill Borough Police Officer STEPHEN SHAULIS, DYNASTY SECURITY, INC., a Pennsylvania corporation, and BRAD JOHNSON, a security officer for Dynasty Security, Inc., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**CONTI, District Judge.**

Pending before the court are motions to dismiss filed by defendants Stephen Shaulis ("Shaulis") (ECF No. 112), and Daniel Stephens ("Stephens") and Woodland Hills School District ("Woodland Hills") (ECF No. 108), as well as a motion for leave to file a third amended complaint with respect to Woodland Hills, (ECF No. 103), filed by plaintiffs Lori Berry ("plaintiff-mother") and Allen Berry ("plaintiff-son" and together with plaintiff-mother, "plaintiffs"). At a motion hearing on June 26, 2013, the court granted the two motions to dismiss and denied the motion to file a third amended complaint; this memorandum opinion and order explains the court's basis for those decisions.

## I. *Procedural Background*

Plaintiff-mother, individually and as the legal guardian of plaintiff-son, initially filed a nine-count complaint against defendants. (ECF No. 1.) Following a hearing on a motion to

dismiss held on August 10, 2012, plaintiffs filed an amended complaint. (ECF No. 69.) On October 31, 2012, a second amended complaint was filed. (ECF No. 75.) The court dismissed certain claims asserted against Woodland Hills and Stephens in the second amended complaint during a hearing on January 29, 2013. Plaintiffs now seek to file a third amended complaint, which the court permitted in part at a hearing held on April 12, 2013. The remaining claims in this case are asserted against Dynasty Security, Inc. ("Dynasty") and its employee Brad Johnson ("Johnson"), Shaulis, and Wayne Anderson ("Anderson"). Pursuant to the court's order at the April 12, 2013 hearing, plaintiffs filed a motion seeking to assert claims against Woodland Hills and Stephens in a third amended complaint. (ECF No. 103.) On May 3, 2013, plaintiffs filed a third amended complaint (ECF No. 102) containing the following counts:

(1) a 42 U.S.C. § 1983 claim (alleging a violation of 14th Amendment substantive due process) against Anderson (Count 1);

(2) a § 1983 claim (alleging a violation of 14th Amendment substantive due process for state created-danger) against Stephens and Woodland Hills (Count 2);

(3) a state malicious prosecution and willful misconduct claim against Shaulis, Stephens and Anderson (Count 3);

(4) a state battery claim against Anderson (Count 4);

(5) a state claim for intentional infliction of emotional distress against Anderson (Count 5); and

(6) a state claim for negligence or gross negligence against Dynasty and Johnson (Count 6).

Anderson answered the third amended complaint on May 17, 2013. (ECF No. 114.) A motion to dismiss filed by Dynasty and Johnson was denied at the motion hearing on June 26, 2013.

**II. *Factual Background Set Forth in the Complaint Viewed as True for Purposes of the Motion to Dismiss***

The third amended complaint alleges that plaintiff-son was a ninth-grade student attending Woodland Hills High School ("Woodland Hills H.S.") when he was involved in a physical altercation with Anderson, who is employed by Woodland Hills as a wrestling coach and behavioral specialist. (ECF No. 102 ¶¶ 10-21.) Plaintiffs allege Anderson pushed plaintiff-son's head into a desk in a classroom and when plaintiff-son left the classroom continued to assault him while in the hallway, violently throwing him to the floor and shoving him down the hall to the principal's office. (Id. ¶¶ 17-21.) Attached to the complaint is security camera footage of the altercation in the hallway (but not in the classroom), which the court has reviewed. Anderson took plaintiff-son to the principal's office, where Anderson allegedly provided false and fabricated statements to Woodland Hills officials. (Id. ¶ 22.)

During the altercation, plaintiff-son sent plaintiff-mother a text message, and she came to the high school. (Id. ¶ 23.) Plaintiff-mother and Stephens allegedly reviewed videotape surveillance of the altercation, which according to the complaint provided clear evidence that Anderson assaulted plaintiff-son violently without provocation or resistance. (Id. ¶¶ 25-30.)

Plaintiffs allege that Stephens contacted Shaulis by radio and advised him that a staff member had been assaulted. (Id. ¶ 31.) Shaulis allegedly reviewed the surveillance video of the incident and a report prepared by Anderson indicating that plaintiff-son assaulted Anderson. (Id. ¶¶ 32-33.) Plaintiffs allege that Shaulis undertook no additional inquiry or investigation of the alleged assault and prepared a criminal complaint charging plaintiff-son with aggravated assault against a school official and disorderly conduct. (Id. ¶¶ 34-35.) Plaintiff-son was suspended from school, a juvenile petition was filed in the Court of Common Pleas of Allegheny County, and

proceedings were instituted against him. (Id. ¶¶ 36-38.) Plaintiffs allege that the charges against plaintiff-son were withdrawn after the assistant district attorney viewed the security video. (Id. ¶ 39.)

Anderson told Woodland Hills' superintendent, Dr. Calinger, that his assaultive behavior against plaintiff-son resulted from Stephens advising him "to be more physical with the students." (Id. ¶ 47.) Plaintiffs allege that Stephens, as principal, is a final policymaker and that this instruction to Anderson was equivalent to issuing an official policy. (Id. ¶ 48.) Plaintiffs assert that Stephens' duty is to provide a safe environment for the students at Woodland Hills H.S. and that Anderson's assault was a foreseeable outcome from Stephens' instruction to be more physical. (Id. ¶¶ 56-61.)

## III. ***Standard of Review***

A motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. at 678-79. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555.) Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting FED. R. CIV. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions. Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. *Discussion*

### A. Motion for Leave to File Third Amended Complaint

Plaintiffs seek leave to file a claim pursuant to 42 U.S.C. § 1983 in the third amended complaint against Woodland Hills and Stephens, for a violation of plaintiff-son's Fourteenth Amendment substantive due process rights under the state-created danger doctrine. (ECF No. 102 at 8.) Woodland Hills and Stephens challenge the motion on the ground that Count 2 fails to state a claim for which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### 1. Legal Framework

Allowing an amendment to a complaint is consistent with Rule 15(a) of the Federal Rules of Civil Procedure, which provides "leave [to amend] shall be freely given when justice so requires." A court, however, may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). The standard of legal sufficiency set forth in Federal Rule of Civil Procedure 12(b)(6) determines whether a proposed amendment would be futile. Id. Amendment is futile where the complaint, as amended, would fail to state a claim upon which relief could be granted. Id. See Cowell v. Palmer Twp., 263 F.3d 286, 296 (3d Cir. 2001) (noting that failure to overcome the time bar of a statute of limitations renders a proposed amendment futile). Therefore, a motion for leave to amend a complaint is held to the same standard as a Rule

12(b)(6) motion to dismiss. The question here is whether the proposed amendment is futile.

Plaintiffs argue that Stephens should be held liable for constitutional violations pursuant to the state-created danger doctrine. There are four prongs necessary to satisfy the state-created danger test:

> To prevail on a state-created danger claim, a plaintiff must prove the following: 1. The harm ultimately caused was foreseeable and fairly direct; 2. The state actor acted with a degree of culpability that shocks the conscience; 3. A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and 4. A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Sanford v. Stiles, 456 F.3d. 298, 304-05 (3d Cir. 2006). Plaintiffs argue that Woodland Hills is also responsible for those violations pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978). The court must determine whether plaintiffs' claim in Count 2 may proceed under the state-created danger doctrine (with respect to Stephens) and, if so, whether there is municipal liability under Monell (with respect to Woodland Hills). Each of the four prongs will be discussed in turn.

**1. *Foreseeability***

Courts have held that "harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual or class of individuals such that the actor is on notice that his or her act or failure to act significantly enhances that risk of harm." Gremo v. Karlin, 363 F. Supp. 2d 771, 784 (E.D. Pa. 2005). The Court of Appeals for the Third Circuit recognized a heightened requirement of actual knowledge of the risk of danger to the plaintiff to satisfy the foreseeability prong of the state-created danger test: "[t]o adequately plead foreseeability then, we require a plaintiff to allege an awareness on the part of the state actors

that rises to [sic] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 238 (3d Cir. 2008); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 911 (3d Cir. 1997) (citing Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198 (5th Cir. 1994)).

Plaintiffs' argument and the allegations in the third amended complaint are not sufficient for the court to infer reasonably that the actual knowledge standard is satisfied. Plaintiffs argue in their brief: "Stephens, being the ultimate authority at the high school, **should have also been concerned with the safety of the students** and assessed the competence of his behavior specialists before instructing them to be more physical with the students." (ECF No. 103-1 at 4) (emphasis added). This statement falls far short of the "actual knowledge" requirement set forth in Phillips, and instead sounds in negligence, which is not sufficient to satisfy the foreseeability requirement.

The facts pleaded in the third amended complaint are also insufficient, as it contains only the conclusory statement that "ANDERSON's assaultive behavior was foreseeable to STEPHENS." (ECF No. 102 ¶ 58.) Legal conclusions are not sufficient to satisfy the Rule 12(b)(6) standard. Twombly, 550 U.S. at 555. Plaintiffs give no indication that Stephens had actual knowledge of the potential danger, and instead rely upon bare allegations that "Stephens knew or should have known that Anderson was less than qualified to be a behavior specialist." (ECF No. 103-1 at 3.) In order to withstand a motion to dismiss, plaintiffs would need to plead facts from which it could be reasonably inferred that Stephens knew Anderson had a propensity for violence and would have acted upon the directive to "be more physical" by violently assaulting students. No facts alleged in the third amended complaint make such an inference

plausible. Without more, the court cannot reasonably infer that the plaintiffs could establish the first prong of the state-created danger test.

### 2. *Degree of culpability*

Plaintiffs quote from the decision in Sanford describing the standard for the degree of culpability: "We again clarify that in *any* state-created danger case, the state actor's behavior must *always* shock the conscience." Sanford, 456 F.3d at 310. Negligence alone is not sufficient to shock the conscience. Id. at 311. The court in Sanford noted:

> The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. In a 'hyperpressurized environment,' an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient.

Id. at 309. In a case like the present, where Stephens was not under pressure to render a quick judgment (insofar as he scheduled meetings with Anderson and other behavior specialists and allegedly made the "be more physical" statement during his meeting with Anderson), plaintiffs in order to plead the requisite degree of culpability must allege facts sufficient for the court to be able to infer that Stephens displayed a "deliberate indifference toward a substantial risk of serious harm to the plaintiff." Hinterberger v. Iroquois Sch. Dist., 898 F. Supp. 2d 772, 788 (W.D. Pa. 2012) (citing Navolio v. Lawrence Cnty., 406 F. App'x 619, 624 (3d Cir. 2011)).

The allegations in the third amended complaint do not indicate that Stephens was deliberately indifferent to a substantial risk of harm to plaintiff-son such that it would shock the conscience. As discussed above, the allegations do not indicate that Stephens was aware of any risk to plaintiff-son based upon his alleged statement. Plaintiffs' allegations do not indicate that Stephens had any reason to believe that Anderson would become physically violent toward a student. Plaintiffs adduce no evidence of past encounters or a history of violence that would

support such a concern. Plaintiffs instead rely upon deposition testimony in which Anderson was unsure of the name of a particular self-defense move—a move he conceded he did not use against plaintiff-son. (ECF No. 103-1 at 3.) Plaintiffs do not show that Stephens was aware of this testimony or any other shortcoming of Anderson. In short, although Stephens may have made a poor choice of words during his meeting with Anderson, that statement alone, in the absence of any other indicia that Anderson was likely to be violent toward students, does not give rise to a plausible inference that Stephens was deliberately indifferent to a risk of harm to plaintiff-son. It cannot, therefore, be reasonably inferred that Stephens' statement shocks the conscience.

### 3. *Relationship between the state and plaintiff-son*

There is a clear relationship between Stephens[1] and plaintiff-son. Because plaintiff-son was subject to encounters with the behavior specialists, he "was certainly within the realm of individuals foreseeably affected by [Anderson's] actions." Hinterberger, 898 F. Supp. 2d at 791. The relationship between plaintiff-son as a student at Woodland Hills H.S. and Stephens as principal of the school is sufficient to satisfy this element of the state-created danger doctrine.

### 4. *Danger created by a state actor*

The fourth prong of the state-created danger doctrine addresses the affirmative steps taken by the state actor which, but for the actor's involvement, the injury to the plaintiff would not have occurred. The Court of Appeals for the Third Circuit has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." Bright v. Westmoreland Cnty., 443 F.3d 276, 282 (3d Cir. 2006). In order to satisfy this prong of the analysis, the plaintiff must "show that the relevant state actor

[1] There is no dispute that Stephens is a state actor for purposes of § 1983 and the state-created danger doctrine.

affirmatively used her authority in a way that created a danger to the plaintiff or that rendered the plaintiff more vulnerable to danger than had the state not acted at all." Hinterberger, 898 F. Supp. 2d at 791 (citing Walter v. Pike Cnty., Pa., 544 F.3d 182, 192 (3d Cir. 2008)). The plaintiff must "(1) show that a state official affirmatively acted to the plaintiff's detriment and (2) establish direct causation between the affirmative act and the result." Estate of Soberal v. City of Jersey City, 334 F. App'x 492, 495 (3d Cir. 2009) (citing Phillips, 515 F.3d at 236-37).

To the extent that Stephens was, in fact, a state actor as the principal of Woodland Hills H.S., his alleged statement did constitute an "affirmative act" that plaintiffs allege made plaintiff-son more vulnerable to potential physical encounters with Anderson. Anderson indicated to the superintendent that he took the actions in question as a result of Stephens' statement to him. While a close question since the statement attributed to Stephens is somewhat ambiguous,[2] the court, from the second amended complaint and the documents integral to it, is able to infer that plaintiff-son was allegedly harmed as a result of Anderson's actions, and Anderson acted based upon the alleged statement made by Stephens. In light of that inference, the fourth prong of the state-created danger test is met.

Although plaintiffs' allegations arguably satisfy the third and fourth elements of the state-created danger doctrine, plaintiffs did not adequately pled a claim against Stephens since the court cannot infer that all four prongs of the test set forth in Sanford may be satisfied. Sanford, 456 F.3d at 304-05. Although Anderson may have believed he could take the action he did, none of plaintiffs' allegations indicate that those actions were foreseeable to Stephens. Here, there is an absence of any history of violence by Anderson that could have put Stephens on notice that

[2] Being more physical could mean making one's presence known and does not necessarily indicate violent acts should be taken,

Anderson would commit such acts. As such, the state-created danger claim against Stephens will be dismissed.

**5. *Liability of Woodland Hills***

Even if plaintiffs succeeded in asserting a claim against Stephens on the basis of state-created danger, Woodland Hills cannot be subject to liability without a showing that Stephens' statement amounted to a final municipal policy. See Sanford, 456 F.3d at 313-14 (acknowledging that municipal liability under state-created danger doctrine is still subject to Monell). A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior. Monell, 436 U.S. at 691. Instead, a plaintiff must "demonstrate that the violation of his rights was caused by either a policy or a custom of the municipality." Berg v. Cnty. of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)). "'Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.'" Id. (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986))). Even a single decision made by a final policymaker—such as a superintendent—can "render his or her decision district policy." McGreevy v. Stroup, 413 F.3d 359, 368 (3d Cir. 2005) (citing Pembaur, 475 U.S. at 480).

Plaintiffs allege that the statement made by Stephens constitutes a municipal policy because he is a final decision maker for the school district. Plaintiffs maintain that "'an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business.'" (ECF No. 103-1 at 8) (quoting McGreevy, 413 F.3d at 368). "[W]hether a particular official has 'final

policymaking authority' is a question of *state law*." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).

Neither party points to a provision of Pennsylvania law that allegedly controls the determination whether Stephens was a final policymaker with respect to being physical with the students. Plaintiffs instead make the conclusory statement that because Stephens stated that he was "in charge of everything," he was "obviously the final policymaker for that issue." (ECF No. 103-1 at 9.)[3] Plaintiffs maintain that Stephens was the final policymaker with respect to strategies for placing behavior specialists in the classrooms, because Stephens did not consult with the superintendent on those matters, and based his decisions upon research in the education field. (Id. at 8.) These decisions, however, to the extent they can be considered policy, have nothing to do with using force or being physically violent with students in order to control or discipline them. Plaintiffs make the conclusory allegation that Stephens was a "final policymaker . . . on issues of student discipline" without any factual support. (ECF No. 102 ¶ 62.) Such conclusory statements (which are contradicted by the argument asserted in plaintiffs' brief) are not sufficient for the court to infer that Stephens was the final policymaker with respect to using force against students.

A court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Despite being given multiple opportunities to amend the complaint, the facts that plaintiffs plead do not raise the right to relief to the level necessary to survive a motion to dismiss. With respect to Stephens, plaintiffs failed to show that his statement meets all four

[3] The court notes that this statement is not included in the third amended complaint and need not be accepted as true for purposes of the Rule 12(b)(6) analysis.

prongs of the state-created danger test, and, therefore, the statement does not shock the conscience. Sanford, 456 F.3d at 304-05. With respect to Woodland Hills, the facts adduced do not show that Stephens was a final decision maker such that his statement could be considered a policy for purposes of municipal liability under Monell. Consequently, having had three opportunities to try to plead sufficient facts, further amendment would be futile and plaintiffs' motion to amend the complaint with respect to Woodland Hills and Stephens is DENIED. See Denny v. Barber, 576 F.2d 465, 469-71 (2d Cir. 1978); 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, RICHARD L. MARCUS, AND ADAM N. STEINMAN, FEDERAL PRACTICE & PROCEDURE § 1487 (3d ed.) ("if the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied.").

**B. Motion to Dismiss by Shaulis**

Shaulis challenges the sole remaining claim against him for state law malicious prosecution primarily on the ground that plaintiffs fail to allege an absence of probable cause. A claim of malicious prosecution under Pennsylvania state law requires a showing that the defendant "instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." Kelley v. Gen. Teamsters, Chauffeurs and Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988). Probable cause is defined as "'a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinarily prudent man in the same situation in believing that the party is guilty of the offense.'" Id. at 942 (quoting Miller v. Pennsylvania R.R. Co., 89 A.2d 809, 811-12 (Pa. 1952)). If an individual lacks probable cause to institute proceedings, courts have found that the malice element may be inferred. Id. at 941. "[T]he existence of probable cause is a question of law for the court rather than a jury question, but may be submitted to the jury when facts material to the

issue of probable cause are in controversy." Id. at 942.

In the present case, there is no dispute that the underlying criminal proceedings terminated in favor of plaintiff-son, so the remaining question is whether Shaulis had probable cause to cause a criminal complaint to be issued against plaintiff-son for aggravated assault or disorderly conduct. Shaulis argues that probable cause existed to bring charges for, at the very least, disorderly conduct, because the charges[4] filed indicate that plaintiff-son pushed Anderson in the chest, thus creating "a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 PA. CONS. STAT. ANN. § 5503(a)(4) (defining disorderly conduct). Disorderly conduct also includes making "unreasonable noise." Id. Schools are recognized as locations where disorderly conduct may potentially take place. Id.

The documents attached to Shaulis' motion to dismiss, including Anderson's narrative of the incident (ECF No. 112-2), and the juvenile court allegation (ECF No. 112-1) illustrate why probable cause existed to bring disorderly conduct charges against plaintiff-son. The documents provide that plaintiff-son "pushed [Anderson] violently away" (ECF No. 112-2) by pushing "Anderson in the chest." (ECF No. 112-1 at 3.) The reports also indicate that plaintiff-son was disruptive in class. Id. Shaulis relies upon a decision of this court, Turosik v. Hougue, No. 08-1248, 2011 WL 1044648, at *7 (W.D. Pa. Mar. 18, 2011) (citing Wright v. City of Phila., 409 F.3d 595, 602-04 (3d Cir. 2005)), which acknowledged that "it is irrelevant what crimes a suspect is eventually charged with, as long as probable cause existed **with respect to any offense** that could have been charged under the circumstances." Id. (emphasis added). Shaulis

---

[4] The document relied upon by Shaulis is the juvenile court allegation he filed in response to the incidents at issue in the present case. To the extent that the document is relied upon in the third amended complaint, the court may consider it at the motion to dismiss stage without converting the motion to dismiss into a motion for summary judgment pursuant to Rule 56. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

maintains that since probable cause existed with respect to the disorderly conduct charge, the malicious prosecution claim must be dismissed.

Plaintiffs respond[5] that Shaulis had no probable cause to file the criminal complaint against plaintiff-son, presumably based upon his investigation of the incident and viewing the surveillance footage. To the extent Shaulis viewed and relied upon the video in making the determination that probable cause existed, plaintiff-son appears to make a shoving motion in the direction of Anderson just before he is picked up off the ground, but it is difficult to determine if he violently shoved Anderson or was simply trying to defend himself. On the other hand, Anderson's statement unequivocally states that plaintiff-son "got into a fighting stance," "pushed [Anderson's] arm away forcefully," and plaintiff-son "pushed violently away" from Anderson in the hallway. While the final encounter took place in the hallway and is depicted in the surveillance video, it appears from the third amended complaint that the information presented to Shaulis was that plaintiff-son initiated other physical contact with Anderson in the classroom, lending further support to Shaulis' decision. When viewed in total, plaintiffs' allegations are not sufficient for the court to infer that Shaulis had absolutely no basis for filing the complaint. Based upon the allegations in the third amended complaint, a reasonable person in Shaulis' position, after reviewing Anderson's narrative and the videotape, could believe that plaintiff-son was guilty of disorderly conduct, and therefore Shaulis' motion to dismiss the claim in Count 3 asserted against him will be GRANTED.

### C. Motion to Dismiss by Woodland Hills and Daniel Stephens

To the extent that the court denied plaintiffs' motion to file a third amended complaint to

[5] Plaintiffs also argue that the alleged disorderly conduct did not occur in a public place. This argument, however, is contradicted by the statutory definition of disorderly conduct, which states that it applies in schools. 18 PA. CONS. STAT. § 5503(a)(4). This argument, therefore, is without merit.

include a state-created danger claim against Woodland Hills and Stephens, their motion to dismiss the §1983 claim asserted in Count 2 against them pursuant to Rule 12(b)(6), (ECF No. 108), is moot. As the court acknowledged at the hearing on June 26, 2013, however, Stephens' motion to dismiss with respect to the malicious prosecution claim against him (Count 3) is granted for the same reasons it was granted for Shaulis—specifically, that based upon the allegations in the third amended complaint and the documents integral to it, a reasonable person after reviewing Anderson's narrative and the videotape could find that probable cause existed to bring a charge for disorderly conduct against plaintiff-son.

To the extent that Stephens is one step farther removed because he did not actually file the charges against plaintiff-son, the claim must be dismissed. Stephens relies upon the decision in Griffiths v. Cigna, 988 F.2d 457, 464 (3d Cir. 1993), overruled on other grounds, Miller v. Cigna Corp., 47 F.3d 586 (3d Cir. 1995). Griffiths involved a claim of common law malicious prosecution against a person who did not actually file the charges. The court cited and relied upon the Restatement (Second) of Torts § 653, comment g, which provides:

> When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

RESTATEMENT (SECOND) OF TORTS § 653, cmt. g. The comment also states that if the information was known to be false, the private person may be held liable for the institution of prosecution. Id.

Here, plaintiffs' allegations indicate that Stephens "falsely report[ed] via radio communication to the Churchill Borough Police Department, specifically SHAULIS, that an

assault had been committed upon a Woodland Hills employee." (ECF No. 102 ¶ 68.) The allegations in the third amended complaint do not indicate that Stephens knew his statements were false, which is a prerequisite for a finding that Stephens could be held liable for instituting charges against plaintiff-son. As discussed above the videotape and Anderson's narrative provide no support for the court to infer that Stephens knew Anderson's statement to be false, and therefore Stephens' motion to dismiss must be GRANTED.

## V. ***Conclusion***

For the reasons stated above, the court concludes that plaintiffs' motion for leave to file count two in the third amended complaint against Stephens and Woodland Hills for a violation of Fourteenth Amendment substantive due process rights pursuant to 42 U.S.C. § 1983 will be denied. The court will also grant Shaulis' and Stephens' motions to dismiss with respect to the claim asserted against them for malicious prosecution (count three). An appropriate order follows.

## **ORDER**

AND NOW, this 19th day of July, 2013, for the reasons set forth on the record at the motion to dismiss hearing on June 26, 2013, and above, it is HEREBY ORDERED that plaintiffs' motion for leave to file a third amended complaint with respect to the Fourteenth Amendment substantive due process claims against defendants Daniel Stephens and the Woodland Hills School District (ECF No. 103) is DENIED, and count two shall be stricken from the third amended complaint.

It is FURTHER ORDERED that the motion to dismiss with respect to the Fourteenth Amendment substantive due process claims against defendants Daniel Stephens and the Woodland Hills School District (ECF No. 108) is DENIED as moot.

It is FURTHER ORDERED that the motion to dismiss filed by defendant Daniel Stephens with respect to the claim of malicious prosecution filed against him in count three (ECF No. 108) shall be GRANTED.

It is FURTHER ORDERED that the motion to dismiss filed by defendant Stephen Shaulis with respect to the claim of malicious prosecution filed against him in count three (ECF No. 112) shall be GRANTED.

SO ORDERED.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge